IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DALE STAFFORD, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v.   ) | Case No. 1:19-cv-921-RAH-SRW |
| ) | [WO] |
| SUNLAND DISTRIBUTION OF ) | |
| FLORIDA, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter concerns a motor vehicle accident that occurred on May 7, 2019, at 1:30 a.m. when a vehicle driven by Plaintiff Dale Stafford hit the trailer of a tractor-trailer driven by Defendant Ladeitriech Sailor. (Doc. 2-2 at 2.) The parties each have filed summary judgment motions against the other, seeking to narrow the claims for trial. (Doc. 45, Doc. 48.) For the following reasons, the summary judgment motions are both due to be denied.

### I. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant 28 U.S.C. § 1332. The parties contest neither personal jurisdiction nor venue, and the Court finds adequate grounds alleged to support both.

### II. FACTS AND PROCEDURAL HISTORY

On May 7, 2019, during his second week of employment with Sunland Distribution of Florida, Sailor drove a loaded tractor-trailer to a Sysco distribution facility in Geneva, Alabama. (Doc. 50-1 at 10, 11, 18; Doc. 71-1 at 4, 13.) He missed his turn into the facility. (Doc. 50-1 at 15; Doc. 71-1 at 4.) Therefore, after traveling west down Highway 52 for some distance, he decided to turn around on Highway 52, a two-lane roadway, using a series of back and forth maneuvers across the roadway and into an intersecting dirt road. (Doc. 50-1 at 12–14, 16, 18.) Sailor decided to turn around via this method instead of finding a location to forward-turn his truck or find a way to double-back to the gate.

Sailor's chosen method resulted in his 53-foot long trailer crossing over and blocking both lanes of Highway 52. (Doc. 71-1 at 4.) While doing so, his tractor was still pointed west—his original direction of traffic—and his lights pointed westward into the face of drivers moving east. (Doc. 50-4 at 40, 41; Doc. 71-1 at 4, 12.) Because it was 1:30 a.m., the area was dark and not well-lit. (Doc. 50-1 at 11, 14; Doc. 50-4 at 38.) Sailor's trailer, however, did have lights and reflective tape. (Doc. 50-1 at 18; Doc. 50-3 at 3; Doc. 50-4 at 40, 41; Doc. 71-5; Doc. 71-6.)

At the same time, Dale Stafford was traveling east on Highway 52 on his way to work. (Doc. 50-4 at 29; Doc. 71-1 at 4.) As he approached Sailor's location, Stafford could see Sailor's headlights in the other lane pointing toward him, but Stafford could not see the trailer across his traffic lane due to the glare from Sailor's

2

lights. (Doc. 50-1 at 15-16;  Doc. 50-4 at 40.) A collision ensued, and Stafford was injured, although the severity of the injury is disputed. (Doc. 2-2 at 3; Doc. 44 at 3.)

Sailor was issued a citation for improper backing in violation of Ala. Code § 32-5A-51(a) (1980), which provides that a driver of a vehicle "shall not back the same unless such movement can be made with safety and without interfering with other traffic." Sailor later pled guilty to the charge and paid the accompanying fine. (Doc. 50-1 at 17.) According to the investigating officer who issued the citation to Sailor, it was "very unsafe" for Sailor to try and perform a three-point turn maneuver on a 24-foot wide public highway with a tractor-trailer at night because, at some point, there will be other traffic. (Doc. 71-1 at 11–13.) Instead, according to the officer, Sailor should have continued down the road and found an area where he could turn around. (Doc. 71-1 at 11–13.)

### III.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions

3

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing the non-moving party has failed to present evidence supporting some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23; *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–16 (11th Cir. 1993) ("For issues, however, on which the non-movant would bear the burden of proof at trial, ... '[t]he moving party may simply show[ ]—that is, point[ ] out to the district court— that there is an absence of evidence to support the non-moving party's case.'") (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991) (en banc)).

Once the moving party has met its burden, the non-movant must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a

4

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A plaintiff must present evidence demonstrating that he can establish the essential elements of his claim. *Celotex*, 477 U.S. at 322. A court ruling on a motion for summary judgment must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact—the moving party is then entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## IV. ANALYSIS

In their Amended Complaint, the Staffords bring claims of negligence and wantonness arising from the accident. (Doc. 2-2.) They seek summary judgment in their favor on the claim of negligence, asserting the undisputed facts of the accident, accompanied by Sailor's violation of Ala. Code § 32-5A-51(a) constitute negligence *per se*. (Doc. 45.) The Defendants dispute this assertion and contend that they are entitled to summary judgment on the claim of wantonness. (Doc. 48.)

### A. The Staffords' Summary Judgment Motion

As it concerns the Staffords' motion, it is due to be denied. Putting aside whether the Staffords have adequately pled a claim of negligence *per se*, they have not shown why they are entitled to judgment as a matter of law under such a theory.

A party can establish negligence *per se* via a statutory violation by proving the following four elements: "(1) the party charged with negligent conduct [has] violated the statute; (2) the statute was enacted to protect a class of persons which includes the litigant seeking to assert the statute; (3) the injury was of a type contemplated by the statute; and (4) the statutory violation proximately caused the injury." *Edwards v. United States*, 552 F. Supp. 635, 638 (M.D. Ala. 1982) (Thompson, J.) (quoting *Fox v. Bartholf*, 374 So. 2d 294, 295–96 (Ala. 1979)). "Generally, violation of a traffic ordinance or rule of the road constitutes negligence *per se*." *Carroll v. Deaton, Inc*., 555 So. 2d 140, 140 (Ala. 1989) (emphasis added).

However, violations of some traffic ordinances or rules only serve as prima facie evidence of negligence. *See Consolidated Freightways, Inc. v. Pacheco-Rivera,* 524 So. 2d 346, 349–50 (Ala. 1988). For example, "where the applicable Rule of the Road requires a judgment to be made on the part of the driver, the reasonable man standard applies and a violation of the statute is not negligence *per se*." *Zatarain v. Swift Transp., Inc*., 776 F. Supp. 2d 1282, 1290 (M.D. Ala. 2011) (quoting *Consolidated Freightways, Inc.*, 524 So. 2d at 350).

Dispositive here as applicable to the negligence *per se* theory is that the statute cited by the Staffords, Ala. Code § 32-5A-51(a), "requires a judgement to be made on the part of the driver." That judgment is reflected in the plain language of the statute, which prohibits backing up on a public roadway "unless such movement can be made with safety and without interference with other traffic." Ala. Code § 32-5A-51(a). Since violation of the statute at issue here requires judgment on the part of Sailor, a violation of the statute is not negligence *per se*. Instead, it serves as prima facie evidence of negligence. Accordingly, the Staffords' summary judgment motion (Doc. 45) is due to be denied.

### B. Defendants' Summary Judgment Motion

As it concerns the Defendants' summary judgment motion regarding the wantonness claim, this motion is also due to be denied.

Under Alabama law, "wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury." *IMAC Energy, Inc. v. Tittle*, 590 So. 2d 163, 168 (Ala. 1991); *accord Blizzard v. Food Giant Supermarkets, Inc.,* 196 F. Supp. 2d 1202, 1208 (M.D. Ala. 2002) (Albritton, C.J.) (citations omitted); *see also* Ala. Code § 6-11-20(b)(3)(1987) (defining wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). While one need not prove intentional conduct to prove wantonness, wantonness requires evidence of

7

a reckless or conscious disregard of the rights and safety of others. *See Wal-Mart Stores, Inc. v. Thompson*, 726 So. 2d 651, 653 (Ala. 1998). Wantonness may arise when one knows that persons, though not seen, are likely to be in a position of danger, and with conscious disregard of known conditions of danger and in violation of law brings on disaster. *See Smith v. Bradford*, 512 So. 2d 50, 52 (Ala. 1987).

Though wantonness requires a conscious or an intentional act, "the actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." *Hicks v. Dunn*, 819 So. 2d 22, 23 (Ala. 2001) (quoting *Scott v. Villegas*, 723 So. 2d 642, 643 (Ala. 1998)). "[I]t is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998).

In the context of automobile accidents, wantonness depends on the particular facts presented in each case. *Cheshire v. Putnam*, 54 So. 3d 336, 342 (Ala. 2010) (per curiam). And, under Alabama law, there is a rebuttable presumption that a driver does not act wantonly in causing a car accident. *See Thomas v. Heard*, 256 So. 3d 644, 657–58 (Ala. 2017) (per curiam). That is because humans "act in their own self-interest," and thus, a driver has "no consciousness that an injury would likely occur from his actions because presumably, he would not engage in activity that would knowingly result in harm to himself." *Id*. at 658.

However, where a driver's actions are more dangerous to other parties than to him, the presumption against self-destructive behavior—and therefore wantonness—does not apply. *See McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240 (N.D. Ala. 2015) (finding that the fact that driver acknowledged that the driver of an 18–wheeler is generally safer in a collision than the driver of the other vehicle meant that the presumption against self-destructive behavior did not apply); *Griffin v. Modular Transp. Co.,* No. 2:12–CV–2378–WMA, 2014 WL 896627, at *4 (N.D. Ala. Mar. 6, 2014) (determining that "[a] collision between a car and the flatbed portion of a tractor trailer does not carry the same risk of injury to the trailer driver as it does to the car driver," and therefore that the presumption against self-destructive behavior was inapplicable).

Moreover, even when the presumption against self-destructive behavior applies, this presumption may be overcome by showing the driver's judgment was impaired or that the conduct at issue was so inherently reckless that a court might otherwise attribute to the driver depravity consistent with disregard of instincts of safety and self-preservation. "Inherently reckless behavior, for example, might be driving in reverse on a major interstate; driving through an intersection at a very fast speed after ignoring a stop sign; or abruptly moving from the right lane into the left lane after seeing a video store on the left and deciding to stop and get a movie." *Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d at 1218, 1222 (M.D. Ala 2015) (cleaned

up). "In each of these instances, something more than mere inattention, that is, an exacerbating circumstance, contributed to the accident." *Id.*

The question for the Court, at this procedural stage and when viewing the facts in the light most favorable to the Staffords, is whether there is evidence from which a jury could reasonably find that Sailor acted in a wanton manner. The Court concludes that there is.

In this regard, Sailor made a conscious and deliberate decision to attempt a three-point turn type maneuver consisting of back and forth movements on a dark, two-lane highway late at night with his 53-foot long tractor-trailer. In doing so, he placed his trailer across the lane of oncoming traffic and accordingly in the right of way for an extended duration of time in contravention of Ala. Code § 32-5A-51(a)— a statutory violation for which he pled guilty. (Doc. 50-1 at 17.) Sailor's actions created a dangerous and hazardous situation for anyone driving down Highway 52 in that early morning hour. And more importantly, he chose this method instead of using an alternative means, such as driving his tractor-trailer down the road to a point where he could safely turn around. Even the investigating officer was critical of Sailor's actions as he cited Sailor for operating his vehicle in a "very unsafe" manner. (Doc. 50-1 at 17; Doc. 71-1 at 11–13.)

While Defendants argue that Sailor's actions, at worst, constituted mere inadvertence, which it very well could have been, there are also facts in the record

suggesting Sailor's actions could have been inherently reckless. Whether the actions were inherently reckless is a fact-driven issue that is appropriate for consideration by a jury and not for a dispositive motion ruling from this Court. *See, e.g.*, *Johnson v. ABF Freight Sys., Inc.*, No. 2:18-cv-01835-MHH, 2021 WL 1320500, at *2–4 (N.D. Ala. Apr. 8, 2021) (denying summary judgment on wantonness claim in motor vehicle accident case where truck driver created a hazardous situation with his chosen method in attempting to make a turn); *Shows v. Redline Trucking, LLC.*, No. 2:18-cv-01692-AKK, 2020 WL 2527105, at *3–4 (N.D. Ala. May 18, 2020) (finding that plaintiff's contention that defendant stopped his trailer in a lane of travel during a dark morning without illuminating any lights was sufficient to preclude summary judgment on wantonness claim); *McCutchen*, 100 F. Supp. at 1240 (denying summary judgment on a wantonness claim because a genuine dispute of material fact existed as to whether driver of tractor-trailer turned his large tractor-trailer around on the highway in conscious disregard of the alleged danger to traffic he was creating); *Monroe v. Brown*, 307 F. Supp. 2d 1268, 1271–72 (M.D. Ala. 2004) (admonishing that courts should be mindful of the Supreme Court of Alabama's holding that wantonness should be submitted to the jury unless there is a "total lack" of evidence from which the jury could reasonably infer wantonness). Thus, Defendants' Motion for Summary Judgment is due to be DENIED with respect to the wantonness claim.

## V. CONCLUSION

Accordingly, for good cause shown, it is hereby

ORDERED as follows:

(1)     The Plaintiffs' Motion for Summary Judgment (Doc. 45) is DENIED; and

(2)     The Defendants' Motion for Summary Judgment (Doc. 48) is DENIED.

**DONE**, on this the 14th day of December, 2021.

          /s/ R. Austin Huffaker, Jr.
        R. AUSTIN HUFFAKER, JR.
        UNITED STATES DISTRICT JUDGE